488

J. Albert Woll,. U.S. Dist. Atty., and William J. Connor, Maurice J. Walsh, and Joseph E. Tobin, Asst. U. S. Attys., all of Chicago, Ill., for the Government.

Robert B. Johnstone, C. S. Bentley Pike, Jacob J. Gordon and Robert J. Gorman, all of Chicago, Ill., for petitioner.

BARNES, District Judge.

The facts in this case are relatively simple and there is little dispute concerning them, with the exception of one item.

The petitioner, Raymond G. Quinn, was on March 26, 1934, sentenced by a judge of this court and committed to the custody of the Attorney General for a period of ten years for thefts from hall letter boxes. On February 12, 1940, petitioner was released on parole from the United States Penitentiary at Leavenworth, Kansas. The Parole Executive in Washington, acting on information obtained by means of a letter from an anonymous inmate of Leavenworth Penitentiary, and after communicating with the chief probation officer at Chicago, and through him arranging for the co-operation of a postal inspector at Chicago, procured from a member of the United States Parole Board, on June 28, 1940, the issuance of a parole violator's warrant for petitioner. This warrant was sent to the United States Marshal at Chicago, and, as appears from a notation thereon, was by him received on July 8, 1940, and, as appears from a further notation thereon, was, by the marshal or someone on his behalf, delivered to a deputy marshal by name Russell for service on July 9, 1940. About 2:30 o'clock on the morning of August 3, 1940, petitioner was arrested by police officers of the City of Chicago, and was by them taken to the Sheffield Avenue Police Station in the City of Chicago, where, petitioner, having made inquiry why he was arrested and being held, was told by the captain in charge that he did not know why petitioner was arrested but that he was being turned over to the United States Government for violation of parole. The Police Department notified the chief probation officer at Chicago that Quinn was in custody. The chief probation officer notified the United States Marshal and the post-office inspector that Quinn was in custody, and communicated with the police officers who had Quinn in custody and requested them to hold him. The petitioner was taken to another police station (11th Street Station) in Chicago, where he was interviewed by a United States postal inspector on Saturday, August 4, 1940. Petitioner continued to be held by the police officers of the city of Chicago until the afternoon of Monday, August 6th, when, after he had been persuaded to sign a confession, he was taken to the United States Court House in Chicago and either, by a post of-

fice inspector or a deputy of the marshal (other than Deputy Marshal Russell) taken to the office of the United States Commissioner, in the United States Court House at Chicago, and there charged with another theft from a hall letter box. After the new complaint was read to the petitioner by the United States Commissioner, he went, in the company of two deputy marshals, from the Commissioner's office to the marshal's office.

The controversy in respect of the facts involves the question as to whether or not the Parole Board's warrant was served upon the petitioner in the Commissioner's office by Deputy Marshal Russell. The petitioner testified that the Parole Board's warrant was read to him in the Commissioner's office by Deputy Marshal Russell. Subsequently, when a controversy arose in Leavenworth penitentiary as to whether or not the writ had been served upon him, the petitioner told a deputy warden of that penitentiary of certain writing on the back of the warrant, of which petitioner could not have had knowledge unless he had seen the warrant, and the only opportunity he had had to see it was in the Commissioner's office in Chicago. Deputy Russell testified that he had no recollection as to whether he had or had not read the warrant to petitioner. He was led to testify that he had not served it, but, upon cross-examination, it appeared that that testimony was based upon the fact that his return did not appear on the back of the warrant, and, accordingly, his answer that he had not served it was stricken out. Deputy Marshal Wohlers who was the other deputy marshal in the Commissioner's office at the time, had no recollection as to whether or not the Parole Board's warrant had been read to the petitioner. The post-office inspector, who made the charge against the petitioner, of which petitioner was advised by the reading to him of the complaint by the United States Commissioner, did not know and could not testify as to whether the Parole Board's warrant had been read to petitioner or not.

The petitioner was indicted by a grand jury impaneled and sworn for the Eastern Division of the Northern District of Illinois, for the offense for which he was taken before the United States Commissioner as aforesaid. Petitioner appeared before the court upon his arraignment without counsel. Counsel was appointed for him, and he pleaded guilty. The court was informed of petitioner's record as an offender, and was further informed that he still had approximately four years and two months to serve of the ten-year sentence which had been imposed upon him previously. Thereupon, on August 26, 1940, the court rendered a sentence, whereby the court directed that the petitioner be committed to the custody of the Attorney General for a period of five years, and by its order further directed that the said sentence of five years run concurrently with the unexpired portion of the sentence imposed on petitioner in the earlier case,—that case being described by its number and reference to the court rendering it. Shortly thereafter, the Parole Executive, who at that time worked partly under the supervision of the Director of the Bureau of Prisons and partly under the Parole Board, sent a telegram to the United States Marshal for the Northern District of Illinois, directing him to return the Parole Board's warrant for petitioner "unexecuted." The chief deputy marshal, who afterwards became and now is one of the Assistant United States District Attorneys opposing petitioner's efforts to be discharged on habeas corpus, returned the Parole Board's warrant to the Parole Board or to the Parole Executive and did not cause to be placed thereon any return of the service of the writ by Deputy Marshal Russell. This court issued a commitment on the five-year sentence and sent the commitment, together with a certified copy of the judgment order and the petitioner, to the Warden of the Leavenworth penitentiary at Leavenworth, Kansas (presumably, the Attorney General had designated that penitentiary as the place of confinement of the petitioner). Both the original commitment, which bears the return of the marshal and which is on file in the office of the clerk of this court, and the certified copy of the judgment order imposing the five-year sentence, affirmatively show that the five-year term was to run concurrently with the unexpired portion of the ten-year term theretofore imposed, and both papers show the number of the earlier case and identify the-

490

court imposing that sentence. When the petitioner reached Leavenworth penitentiary, or soon thereafter, it was decided by the prison authorities that the court had exceeded its authority in ordering the five-year term to run concurrently with the unexpired portion of the ten-year term, and, that accordingly, that part of the court's judgment should be disregarded. This court was never advised by the District Attorney for the Northern District of Illinois, by the marshal for the Northern District of Illinois, by the Warden of the United States Penitentiary at Leavenworth, Kansas, by the Director of Prisons, by the Parole Executive, by the Parole Board, by the Attorney General, or by any other officer or agency on behalf of the United States at any time prior to the completion of the service by the petitioner of the five-year term imposed upon him by this court of the fact that they could not give effect to that portion of the five-year sentence which this court rendered in 1940 requiring that it be served concurrently with the earlier sentence because petitioner was not serving the ten-year sentence imposed by this court, since the Parole Board's warrant had not been served upon him. The petitioner claims to have written a letter to this court some months after his incarceration upon the five-year sentence commitment and thereby to have told the court of the refusal of the Attorney General, through the Parole Executive and the Penitentiary Warden, to give effect to that portion of the five-year sentence of this court which required that it be served concurrently with the unexpired portion of the ten-year term. The court cannot find that letter in his files, and has no recollection of having received it. But if it was received, it came to the court's attention months after the term had ended at which the sentence had been imposed and months after the Attorney General had taken the petitioner into custody for the serving of his sentence.

After the expiration of the five-year term which this court imposed upon the petitioner in 1940, the Parole Board caused its parole violation warrant to be served upon the petitioner, and he was then allowed to begin service of the remaining 1,503 days of his ten-year term. He has now served about two years of that portion of that ten-year term, and still has about two years to serve, if he is rightfully held by the Attorney General. The net result to the petitioner, if he is now rightfully held by the Attorney General, will be that he will serve about four years and two months more than the court imposing the five-year sentence intended him to serve.

Some few weeks ago, the petitioner sent to the writer a petition, which was evidently drawn by himself, wherein he set forth the facts and prayed that the five-year sentence imposed upon him by this court be corrected. The court directed that the petition be filed in the clerk's office and that the petitioner have leave to prosecute it as a poor person, appointed counsel to represent petitioner, directed that a writ of habeas corpus ad subjiciendum be issued to bring in the body of the petitioner, and set the matter for hearing. Subsequently, the court issued a writ of habeas corpus ad testificandum for the petitioner, making it returnable on the same day as the other writ. The petitioner was brought into court on the writ of habeas corpus ad testificandum on its return day. At or about this time, counsel for petitioner filed an amended petition, wherein was questioned the lawfulness of petitioner's incarceration presently. Upon the return day of the writ, the court heard the testimony of the petitioner and some other witnesses, and continued the matter in order that the court might be fully advised of the actions of all of the persons who had to do with the arrest and incarceration of the petitioner at or about the time of his arrest for the offense which eventuated in the five-year sentence. On the motion of counsel for the petitioner, the court issued writs of habeas corpus ad subjiciendum directed to the marshal for the Northern District of Illinois, and to the Warden of the Penitentiary at Leavenworth, Kansas. Both of those writs were served in this the Northern District of Illinois. An order was made consolidating all of the proceedings, and it was thereby directed that the evidence heard be applicable to all of the proceedings. Subsequently, the hearing

was resumed and all witnesses that petitioner or the United States desired to call were heard.

The contentions of the United States though expressed in various ways are in the main two: First, that the court is without jurisdiction,—that it caused the petitioner to be brought to the jurisdiction of this court on a writ of habeas corpus ad testificandum, and that, accordingly, it cannot acquire jurisdiction to inquire into the validity of the custody of the petitioner by the Warden of the Penitentiary at Leavenworth, Kansas; and, second, that this court could not, by its direction, which was a part of the five-year sentence, that said sentence run concurrently with the unexpired portion of the ten-year term, affect the jurisdiction of the Parole Board over the unexpired portion of the ten-year term.

█ There has been controversy in this case as to whether the marshal for the Northern District of Illinois or the Warden of the United States Penitentiary at Leavenworth, Kansas (as the authorized representative of the Attorney General), has custody of Raymond G. Quinn. The judgment of this court rendered on March 26, 1934, provided that "Raymond Quinn * * * be committed to the custody of the Attorney General to be confined in a United States penitentiary for and during a period of ten years." Likewise, the judgment of this court rendered on August 26, 1940, provided "that Raymond G. Quinn be committed to the custody of the Attorney General to be confined and imprisoned in a United States penitentiary for and during a period of five years." Quinn has, accordingly, been in the custody of the Attorney General of the United States, through his authorized representative, the Warden of the United States Penitentiary at Leavenworth, Kansas. On November 7, 1946 this court ordered the issuance of a writ denominated a writ of habeas corpus ad testificandum and Quinn was, by the Warden of the Penitentiary at Leavenworth, Kansas, turned over to the United States Marshal for the Northern District of Illinois, and was by said marshal produced before this court pursuant to the command of the last-mentioned writ. The question arises, Did the custody of Quinn change? The answer depends upon the nature of a writ which we call the writ of habeas corpus ad testificandum. Concerning such a writ, it has been said by the United States Circuit Court of Appeals for the Third Circuit in Re Thaw, 3 Cir., 166 F. 71, 74, Ann.Cas.1915D, 1025: "That writ was not the high prerogative writ of habeas corpus, the great object of which is deliverance from unlawful imprisonment, and which either a court, a justice, or a judge may grant and adjudicate, but was merely the ancient common-law precept to bring a prisoner into a court to testify, and it was none the less the process of the court from which it issued because the order for its issuance emanated from a judge at chambers. It was granted and issued to bring a prisoner before the United States District Court at Pittsburg, in order that his testimony might there be taken, and it was directed to the custodian of his person, not that an 'inquiry into the cause of restraint of liberty' might be made, but with an object analogous to that sought to be attained by directing a subpœna duces tecum to the custodian of an evidential document, who, of course, upon cause shown, may subsequently be excused from producing it. 'If the desired witness is confined in jail (or in a state hospital for the criminal insane) a subpœna would be of no avail, since he could not obey it and his custodian would still lack authority to bring him. Accordingly a writ to the custodian is necessary, ordering the prisoner to be brought to give testimony. This writ of habeas corpus ad testificandum, grantable in discretion at common law, is now usually authorized by statute as a matter of course.' Wigmore on Evidence, vol. 4, § 2199."

The Superior Court of Pennsylvania has held in Commonwealth ex rel. Fraley v. Rotan, 82 Pa.Super. 172, that the writ of habeas corpus ad testificandum does not remove the person whose presence is desired in court from the custody of the person or institution to which he has been committed, the function of the writ is to bring the witness into court, and when he is produced the writ is executed but he still

remains in charge of the warden or other custodian. In that case the court said: "There is a clear distinction between the writ of habeas corpus as ordinarily understood, technically known as the 'ad subjiciendum' which Blackstone describes as 'the great and efficacious writ' issued for the purpose of inquiring into the validity of the relators detention or of fixing bail, and those writs bearing the name of habeas corpus which are issued for the purpose of bringing a witness into court who is under restraint or which were employed for the removal of proceedings from the inferior court for review and for various other purposes enumerated by the law writers. The writ of habeas corpus ad testificandum does not take the custody of the party who is desired to be brought into court from the custody of the person or institution to which he has been committed. The purpose of the writ is to bring the witness into court. When he is produced the writ is executed. He is still in charge of the warden or other officer who is designated as his custodian: Com. v. Ross [13 Dist. 493], 28 Co.Ct. 276. The right of custody is not in question, the writ is merely in the nature of a subpœna, the difference between the two being that a subpœna is served upon the person whose presence is desired, whilst the writ is served upon the one who is able to bring in his custody the person desired into court."

Accordingly, Quinn, even as he sits in this court room, is in the custody of the Attorney General of the United States, by one or the other of his authorized representatives, the Warden of the United States Penitentiary at Leavenworth, Kansas, or the marshal for the Northern District of Illinois. The question before this court is whether or not that custody of the Attorney General of the United States of Quinn is lawful.

The only objection that the court has heard to the exercise by this court of the power to hear and determine whether petitioner is rightfully held by the Attorney General is that it will inconvenience the Government and the court if the court does so in this case. The Warden of the penitentiary at Leavenworth was in this district, and the writ of habeas corpus was served upon him in this district. When inquiry was made of him on the witness stand by counsel for petitioner as to whether or not he wished to interpose technicalities as a defense to petitioner's petition for habeas corpus he disclaimed any such intent. The argument that to permit this court to inquire into the validity of the custody by the Warden of the penitentiary at Leavenworth of petitioner will inconvenience the Government and the court seems to the court to conflict with one of our fundamental ideas that in this democratic republic the government and the courts are the servants of the people, and all of the people, and that the people are not servants of the Government or the courts. If it is a question of convenience, it seems to the court that the convenience of the petitioner far outweighs the convenience of the Government or of the court in a case such as this. The petitioner not only is a pauper but he is confined in a penitentiary several hundred miles removed from the place where he was served with the Parole Board's warrant (if he was served), and several hundred miles removed from the place of the residence of the witnesses to that service (if there were any such witnesses). The Attorney General, who has the custody of the petitioner, has representatives in each and every district of the United States in that he has supervisory power over each United States Marshal and each United States District Attorney in each district of the United States. The difficulty of the petitioner in proceeding in a district other than this was very clearly demonstrated in the habeas corpus proceeding which he instituted in the District of Kansas. In that proceeding, petitioner's counsel could not find the deputy marshal (Russell), who petitioner claimed had served the Parole Board's warrant upon him, although the attorney came to Chicago and devoted several days to an effort so to do. In that case the deposition of the chief deputy marshal at Chicago was taken, and the chief deputy marshal testified that the Parole Board's warrant was not served upon petitioner, but when that chief deputy marshal was placed upon the witness stand in

open court in the present case it developed that he had no personal knowledge as to whether the Parole Board's warrant had or had not been served on petitioner. The court is firmly of the opinion that if jurisdiction depends upon the matter of convenience, the convenience of the petitioner far outweighs that of the Government or the court. The court does not, however, believe that the question is one of convenience. The Warden of the penitentiary at Leavenworth was in this district, as has been stated, when the habeas corpus writ was served upon him. He holds the petitioner as the authorized agent of the Attorney General. He very properly said that he did not wish to interpose technicalities as defenses in this proceeding. The court believes that it has jurisdiction to hear and determine the question as to whether or not the petitioner is lawfully held in custody.

As has been stated, the petitioner was taken into custody by the Chicago police on August 3, 1940, and informed that he was being held for violation of a federal parole. The police notified the chief probation officer at Chicago of the arrest and the chief probation officer asked the police to hold the petitioner. The police and the federal officers held the petitioner from 2:30 a. m. of Saturday, the 3d of August, to the afternoon of Monday, August 5th, when, after he had been persuaded to confess, he was taken to the Commissioner's office. During the whole of this period—two and one-half days—if he was held by virtue of any warrant, it was the Parole Board's warrant.

The court, having heard and observed the witnesses, is of the opinion that the Parole Board's warrant was served upon the petitioner in the United States Commissioner's office by Deputy Marshal Russell prior to the reading to the petitioner of the complaint in the second case. The petitioner is a mail box thief and, like many mail box thieves, gets into that sort of trouble repeatedly, but he tells a straight-forward story and gives the impression that he is telling the truth. Sometime after the appearance in the United States Commissioner's office he wrote a letter or letters requesting that the Parole Board's warrant be served upon him. He explains this by saying that he thought the warrant that was served upon him was a fugitive warrant and that when other prisoners in jail suggested that he should see to it that the Parole Board's warrant should be served upon him, he requested that be done, not realizing that the warrant that had been served upon him was in fact the Parole Board's warrant.

The court is of the opinion that while the Parole Board's warrant was served upon the petitioner, yet, when the telegram came from the Parole Executive in Washington to the marshal, directing him to return the Parole Board's warrant unexecuted, the chief deputy marshal returned the warrant to Washington, as he was directed to do, without placing thereon the return which the facts required him to place thereon. Perhaps he returned the warrant without making inquiry of Deputy Marshal Russell, who had had the warrant in his possession for service, as to whether or not he had made service. In this connection there is a peculiar circumstance which has not been satisfactorily explained to the court. On the marshal's register or docket a line has been drawn through the name of "Russell" so as thereby to erase from the register or docket the record of the fact that the writ had been delivered to Deputy Marshal Russell for service. The post-office inspector who made the complaint before the United States Commissioner, which finally resulted in the imposition of the five-year term, testified that the petitioner left the United States Commissioner's office accompanied by two deputy marshals. The only two deputy marshals referred to in the testimony as being in the United States Commissioner's office at that time were Deputy Marshal Russell, who unquestionably at that time had the Parole Board's warrant in his possession for service, and Deputy Marshal Wohlers. The court is convinced, as has been stated, that the Parole Board's warrant was read to the petitioner in the United States Commissioner's office by Deputy Marshal Russell, and that the petitioner left the Commissioner's office in the company of two deputy marshals, one of whom held the Parole Board's

494

warrant, and the other of whom held the Commissioner's warrant; that petitioner submitted to the custody of both deputy marshals and that he was accordingly held in custody by the marshal for the Northern District of Illinois by virtue of each of the two warrants.

The court has found that the Parole Board's warrant was read to the petitioner in the United States Commissioner's office in the court house at Chicago, but the court cannot believe that this case turns on the question as to whether or not that warrant was read to the petitioner. The deputy marshal, Russell, who had the Parole Board's warrant in his possession for service was in the United States Commissioner's office. The petitioner was there. The two deputy marshals (Russell and Wohlers) and the petitioner left the Commissioner's office and returned to the marshal's office. Deputy Marshal Russell had the Parole Board's warrant in his possession for service. Deputy Marshal Wohlers presumably had the writ issued by the United States Commissioner in his possession. Petitioner was held and continued to be held by the United States Marshal for the Northern District of Illinois, who had two writs for petitioner, the one being the Parole Board's warrant and the other that issued by the United States Commissioner. The marshal continued to hold the Parole Board's warrant and he continued to hold the petitioner until finally petitioner was re-indicted and sentenced by this court, as above stated, to the custody of the Attorney General for a period of five years to run concurrently with the unexpired portion of the ten-year term. The court is of the opinion that it must be inferred from the foregoing facts that from and after the afternoon of August 5, 1940, petitioner was in custody on two warrants, one of them being the warrant of the Parole Board. Furthermore, a reference to the applicable statute discloses that any other inference flies in the face of the statute, which reads as follows: "Any officer * * * authorized to serve criminal process within the United States, to whom such warrant shall be delivered, is authorized and *required to execute such warrant by taking such prisoner and re-*

*turning him to the custody of the Attorney General."* § 718, Title 18 U.S.C.A.

By this statute, the Marshal for the Northern District of Illinois was "Required to execute such warrant." The theory of the Government in this case would repeal this statute, and by a mere rule or "directive" of the Parole Board, whereby it seeks to delay the service of its parole warrants. The court is of the opinion that it must be presumed that the United States Marshal for the Northern District of Illinois did what the foregoing statute required him to do, and that neither he nor the Parole Board, nor the Attorney General, will be permitted to say that the Parole Board may abrogate the foregoing statute by rule or directive.

The United States has made the further argument that even if this court has jurisdiction to hear and determine this matter yet the incarceration of the petitioner is legal because this court had no power to affect the jurisdiction of the Parole Board over the unexpired portion of the ten-year sentence. This court never has intended and does not intend to attempt to affect the jurisdiction of the Parole Board over the unexpired portion of the ten-year sentence. This court never attempted to do more than sentence the petitioner upon a plea of guilty, which plea was entered in 1940. The sentence which the court then intended to impose and the only sentence which the court intended to impose was a five-year sentence to run concurrently with the unexpired portion of the ten-year term. It seems to the court that it goes without saying that the portion of that sentence which provided that it run concurrently with the unexpired portion of the ten-year term was material. It was material because it meant upwards of four years (more or less) confinement in a penitentiary to the petitioner. When the commitment from this court directed to the United States Marshal for the Northern District of Illinois and to the Attorney General came to the attention of the Warden at Leavenworth Penitentiary he should either have given effect to that material portion of that sentence imposed by this court in 1940, or he should forthwith, and before the expiration of the term at

which the sentence was rendered, and before the petitioner started upon the service of his sentence, and while this court had power to change that sentence, have advised this court that he could not execute said sentence as rendered, and that, therefore, he could not accept the petitioner as a prisoner. Had the Warden, the Director of Prisons, the Parole Executive, the Parole Board, or the Attorney General done this, this court could then, within the term at which the sentence was rendered, and before the petitioner started upon the service of his sentence, have reconsidered petitioner's sentence and, perhaps, directed that the petitioner be committed to the custody of the Attorney General for a period of one hour, or that he be subjected to a minimum fine (which some good Samaritan would doubtless have paid). That was not done. The court was not advised that the Warden, the Director of Prisons, the Parole Executive, the Parole Board or the Attorney General could not give effect to the sentence which the court had imposed. On the contrary, all of those persons, the Warden, the Director of Prisons, the Parole Executive, the Parole Board and the Attorney General concluded to set aside a material part of the sentence imposed by this court in 1940, namely, that part of the sentence which directed that that sentence run concurrently with the unexpired portion of the ten-year sentence. The fact is that instead of this court attempting to interfere with the power of the Parole Board over the unexpired portion of the ten-year sentence, the Warden, the Director of Prisons, the Parole Executive, the Parole Board, and the Attorney General changed and modified the five-year sentence of this court rendered in 1940 by eliminating a material part thereof. That they could not lawfully do.

The court is of the opinion that the unexpired portion of the ten-year term began to run from the date petitioner was returned to the custody of the Attorney General, § 723c, Title 18 U.S.C.A. (presumably when he was arrested on August 3, 1940) and, since the five-year term ran concurrently therewith, the petitioner should have been released at the end of the unexpired portion of the ten-year term or the end of the five-year term, whichever was later. That date passed more than two years ago.

There may be an order discharging petitioner from custody.

The court appointed Messrs. Robert B. Johnstone, C. S. Bentley Pike, Jacob J. Gordon and Robert J. Gorman, members of the bar of this court, to represent the petitioner, who is a pauper, in this case. Counsel have labored long and diligently upon behalf of the petitioner, and they have the thanks of the court for so doing.