Lawrence W. GREEN, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18176.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 7, 1964.

Decided July 1, 1965.

Mr. Thomas G. Shack, Jr., Washington, D. C., appointed by the District Court, for appellant.

Mr. Frank Q. Nebeker, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Alan Kay and Joseph A. Lowther, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and FAHY, WASHINGTON, DANAHER, BASTIAN,* WRIGHT, and McGOWAN, Circuit Judges, sitting *en banc*.

BAZELON, Chief Judge:

This appeal presents an unusual situation—a patient opposing release from St. Elizabeths Hospital.

In 1961 our appellant was found not guilty by reason of insanity on robbery charges and committed to St. Elizabeths Hospital. D.C.CODE § 24–301(d). While still under this commitment, he eloped and perpetrated crimes for which he was convicted in 1963. After this conviction, the Government applied to the District Court for an order for his unconditional release from the Hospital. Appellant's sentence would then be served in prison

rather than in a hospital. The appeal from that conviction was decided by this court on June 23, 1965, Green v. United States, No. 17841, 122 U.S.App.D.C. ——, 351 F.2d 198. In the present appeal, we consider the District Court's order granting the Government's motion for unconditional release, and denying the independent mental examination which appellant had requested in aid of his opposition to release.

The initial question is whether Green has standing to appeal the District Court's order. Because the statute governing release describes the roles of the prosecuting authority and the court, but not the patient,[1] it might be said that the patient has no cognizable interest in opposing his release. No doubt the principal concern of the statute is for procedures to protect the public from the premature release of dangerous persons. But there may be circumstances in which a patient may have bona fide fears that his release will endanger himself or the community to which he is being released. We think the court may consider such circumstances on the issue of release and its determination is reviewable on appeal.

Nor do we think that standing is diminished where, as here, release is to a prison rather than to the community at large. While the change between hospital and prison environment may be different from the change between the hospital and unsupervised personal liberty, either change could be traumatic to a mental patient; and he may be dangerous to fellow-prisoners as well as to fellow-workers, families, and the public.

---

* Circuit Judge BASTIAN became Senior Circuit Judge on March 17, 1965.

1. D.C.CODE § 24–301(e) reads in pertinent part:
    "Where any person has been confined in a hospital for the mentally ill pursuant to subsection (d) of this section, and the superintendent of such hospital certifies (1) that such person has recovered his sanity, (2) that, in the opinion of the superintendent, such person will not in the reasonable future be dangerous to himself or others, and

(3) in the opinion of the superintendent, the person is entitled to his unconditional release from the hospital * * * such certificate shall be sufficient to authorize the court to order the unconditional release of the person * * * but the court in its discretion may, or upon objection of the United States or the District of Columbia shall, after due notice, hold a hearing at which evidence as to the mental condition of the person so confined may be submitted, including the testimony of one or more psychiatrists from said hospital. * * *"

Moreover, we think a patient has a cognizable interest in securing the medical treatment which commitment is intended to assure. Here, counsel for Green suggested that the recommendation of release did not rest on an impartial judgment based solely on medical data, as Congress intended, but rather on the Hospital's desire to relieve its embarrassment for having transferred from maximum security a man who later escaped and committed criminal acts. On the facts to be related, the possibility that such non-medical factors influenced decision is real enough to require inquiry in the public interest.

We turn now to the merits of this appeal. After Green's 1961 commitment to St. Elizabeths, he eventually obtained ground privileges and on more than one occasion left the Hospital without authorization. During one of these escapes, he was arrested for the robbery involved in the recent appeal, No. 17841. He was not returned to the Hospital, however, until a motion was made for mental examination. And, when that examination had been completed, on February 15, 1963, the Hospital did not continue custody under the 1961 commitment, but returned Green to the United States Marshal to await trial. On April 18, 1963, two weeks after Green had been convicted in No. 17841 and two months after conclusion of the examination, the Hospital recommended release from the 1961 commitment. The Hospital had no more information then than on February 15, but offered no reason for the delay.

After several delays due to withdrawal of Green's assigned counsel, the Government's motion for release was called for hearing in August 1963. An independent psychiatric examination was requested and denied. Before any evidence was presented, the Assistant United States Attorney asserted that "this defendant is playing fast and loose with this Court," and the court agreed that "he is trying

to." Thereupon the hearing commenced, with the Government calling the only witness, Dr. Owens of St. Elizabeths staff.

Dr. Owens testified that he had not been able to see Green since Green was returned to the Hospital in early May 1963. Although Green had refused to see him, Owens said attendants reported "no abnormal symptoms or signs of behavior since he has been back to the hospital," other than refusals to see him. Dr. Owens admitted that he didn't know the reasons for Green's refusal to see him, and that the purpose for the February examination, when he had seen Green last, was to determine whether there was mental illness, rather than fitness for release. Thus it was established that there had been no psychiatric inquiry directed particularly to Green's fitness for release, and that the most recent diagnostic inquiry for any purpose was six months distant. Only Dr. Owens' asserted belief that Green was "acting up" because he desired to avoid release, and not because he was ill,[2] undercut the possibility that Green's concern for the place of his confinement was genuine.

At the hearing's close, Green asked to address the court and was allowed to do so. He launched into a bizarre and apparently irrational harangue. He stated, for example, that he was a citizen of Paris, France; although he had opposed release and sought the hearing on the Hospital's recommendation, he said that his purpose in court was to be transferred away from the "slave house" at St. Elizabeths to a federal penal institution. The court took no action except to tell Green to confine his remarks to the subject of the hearing and, eventually, to be quiet or be held in contempt. The court thereupon determined that appellant was fit for unconditional release.

██ ██ The foregoing raises a serious doubt that the Hospital's recommendation for release was based upon adequate

---

2. The psychiatric inquiry which ended in February had proposed as a diagnosis of Green's condition that he had a schizophrenia reaction, in remission. This, Dr. Owens said, meant no more than that symptoms had disappeared at the time of diagnosis. They could flare up again in a short period of time.

medical data. The unexplained delays and failure to obtain new diagnostic information are unhappily consistent with the possibility that the recommendation was based on the guilty verdict alone. At least after Green's courtroom appearance, the need for medical data should have been clear. Counsel had suggested the possibility that the Hospital was acting through embarrassment rather than medical judgment as one ground supporting his request for an independent psychiatric examination. It is unnecessary to agree with this suggestion, since we conclude from the course of events we have set forth that the denial of this request was error.[3] In view of this conclusion, we do not reach other questions concerning the regularity of the proceedings below.

The difficulty presented by these proceedings is emphasized by the fact that in January 1964 appellant was again sent to St. Elizabeths, this time by prison officials acting under D.C.CODE § 24–302, for the psychiatric treatment that Hospital authorities had claimed and the court agreed he had not needed. It is not clear, however, what relief Green is entitled to, or if he still desires relief. He has now had the benefit of further psychiatric treatment; it is possible that he has been returned to prison authorities under the provisions of D.C.CODE § 24–303(b). We think it just under the circumstances, 28 U.S.C. § 2106, to remand the case to the District Court with instructions to conduct such further proceedings as will clarify the present situation and enable Green, if so advised, to make such representations or file such pleadings as will express his present interest. If it should develop that the matter is moot, the District Court may so find; its action in any event is subject to the law governing appellate review.

McGOWAN, Circuit Judge, with whom DANAHER, Circuit Judge, and BASTIAN, Senior Circuit Judge, join (dissenting):

This appeal from the District Court's unconditional release of appellant from St. Elizabeths was heard at the same time as Green v. United States, 122 U.S. App.D.C. ——, 351 F.2d 198, decided June 23, 1965. The conviction involved in that case carried with it a prison sentence which began to run immediately, but appellant was returned to St. Elizabeths until such time as there should be a termination of his commitment by virtue of his having been found not guilty by reason of insanity at a trial on an earlier criminal charge in 1961. That commitment was pursuant to Section 301(d) of Title 24 of the D.C.Code—a statute which was passed for the purpose of ensuring that those who committed acts otherwise criminal, but in respect of which they were found mentally irresponsible, would go from the courtroom to a mental hospital rather than into the street. That custody was not to end until the superintendent of the hospital certified that it could safely be done; and, even then, the prosecutor—but only the prosecutor—was given the privilege of entering an objection to the certification which would necessitate the setting of the matter down for hearing and an eventual judicial determination, upon the evidence adduced at such hearing, as to whether there should be either release from the hospital or a continuation of custody by it.

3. A patient has a right to independent psychiatric assistance where psychiatric inquiry undertaken by the state may be slanted to the state's interests, Watson v. Cameron, 114 U.S.App.D.C. 151, 312 F.2d 878 (1962); Cooper & Kennedy v. United States, 119 U.S.App.D.C. 142, 337 F.2d 538 (1964) (concurring opinion), and should be afforded such assistance in suitable cases even though no such risk appears, Brown v. United States, 118 U.S. App.D.C. 76, 331 F.2d 822 (1964); De Marcos v. Overholser, 78 U.S.App.D.C. 131, 137 F.2d 698 (1943); Whalem v. United States, 120 U.S.App.D.C. ——, 346 F.2d 812, p. 823, decided April 23, 1965 (dissenting opinion).

The prosecutor made no objection to the superintendent's certificate in this case. Thus, the hearing that was held in the District Court was not one required to be held under the statute. Just why it was held is not clear from the record. The statute does contemplate that the court "in its discretion" may, despite the superintendent's certification, proceed to hearing and determination, but this record suggests that the matter was set down for hearing without any conscious exercise of the "discretion" referred to in the statute and perhaps on an erroneous administrative determination that objection by the patient, as well as by the prosecution, necessitates a hearing. That, of course, is not what Congress provided.

It seems likely that the vesting of a discretion in the court in this regard was primarily in aid of the central Congressional purpose to protect the public against the premature release of those who have committed criminal acts because of mental disease. The mere failure of the prosecution to object was not to disable the court from satisfying itself by an inquiry of its own. This is not to say that this discretion could never be properly exercised by reason of representations from a prisoner, about to be restored to complete and unsupervised personal liberty, as to genuine fears for his own safety, or that of the public, if released under the certification. But the record does not indicate this to be such a case; and I find nothing in it which shows an interest in this appellant of such a nature as to afford him standing to press an appeal in this court from the proceedings in the District Court. Accordingly, I would dismiss the appeal.

BASTIAN, Senior Circuit Judge (dissenting):

I concur in my brother McGowan's dissenting opinion and the result reached by him.

I only add that, in any event, if a hearing were proper, there was no error in the District Court's action as there was ample support therefor in the record; and there was no error, under the circumstances of this case, in the court's refusal to grant appellant's motion for an independent psychiatric examination.