**Meyer CAPLAN, Appellant,**

v.

**Dale C. CAMERON, Superintendent, Saint Elizabeths Hospital, Appellee.**

**No. 19815.**

United States Court of Appeals District of Columbia Circuit.

Argued June 8, 1966.

Decided Sept. 7, 1966.

---

Mr. Wilmer Mechlin, Washington, D. C. (appointed by this court), for appellant.

Mr. Robert Kenly Webster, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and DANAHER and MCGOWAN, Circuit Judges.

BAZELON, Chief Judge:

Petitioner, acting pro se, filed this habeas corpus petition seeking release from Saint Elizabeths Hospital. He had been involuntarily committed by the District Court following its determination that he was not guilty by reason of insanity of assault with a dangerous weapon in February 1965. At the habeas hearing, where he was represented by appointed counsel, it appeared that petitioner's schizophrenia is now in remission and that the Hospital would recommend his release conditioned on plans for employment and living. The Hospital psychiatrist testified, however, that his present plans were "too vague." The court denied the writ on the sole finding that petitioner had not recovered from his mental illness and would be a danger to the community if released.

 From the briefs and arguments on appeal, it now appears that appellant wished the hospital authorities to release him temporarily solely for the purpose of travelling to his home city of Baltimore to seek the employment and living arrangements necessary for conditional release. However, this was not expressly asserted at the hearing below. Notwithstanding this failure, we think that "law and justice", 28 U.S.C. § 2243, would be best served by remanding the case to the District Court with directions to consider the matter upon petitioner's request. Since appellant initiated these proceedings pro se and is proceeding in forma pauperis, and since proceedings involving the mentally ill are not strictly adversary, we are constrained not to burden him with the task of filing a new petition for this purpose. These considerations also make it desirable that petitioner's counsel in this court continue to represent petitioner on remand.

Remanded for further proceedings in accordance with this opinion.

DANAHER, Circuit Judge (dissenting):

Once again this court is reversing a judgment of the District Court although the trial judge, correctly in my view, followed the governing statute and based his decision on the record made before him. I wish to dissociate myself from the *ad hoc* disposition reached by my colleagues.

Here the trial judge specifically found that Caplan "is suffering from an abnormal mental condition * * * Paranoid Type" and that he would be dangerous to himself and others if released. Those findings are beyond challenge.

Commencing in 1938, and again in 1940 and 1961, Caplan had been committed to mental institutions, in two of the episodes having used a gun in assaulting his victims. He was committed again in February, 1965, this last time after using a knife in perpetrating an assault.

With reference to the last occasion, Caplan testified he had come to Washington to see the F.B.I. because the Mafia was after him! If released, he stated, it would be his intention to go to Baltimore, find a room, and try to get a job as a collector salesman.

The psychiatric expert testified that Caplan was not ready for any such exposure. The two most recent menacing episodes had occurred after Caplan had been subjected to great stress. Obviously, that his schizophrenia was in remission meant only that symptoms were not apparent at the time of diagnosis, and, of course, could again light up, given exciting circumstances.

In short, the doctor's position was that if a particular job could be located for him which would be suitable and not be stressful, and if Caplan could demonstrate an ability to handle it, a *conditional* release *might* be in order.

The statute [1] says that none of its provisions would preclude Caplan in habeas corpus proceedings "from establishing his eligibility for release under the provisions of this section." The trial judge concluded the appellant had failed to sustain that burden.[2]

The statute says the superintendent of the hospital may certify that the person committed to the hospital's care has (1) recovered his sanity; (2) that in the superintendent's opinion, such person will not in the reasonable future be dangerous to himself or others; and (3) the person is entitled to his unconditional release. The superintendent filed no such certificate,[3] and even the possibility of a conditional release would depend upon carefully delineated circumstances.

It is clear beyond peradventure, as I read this record, that the District Judge applied proper standards, upon an adequate record, and in the exercise of that discretion confided to him by law and in accord with a comprehensive and carefully conceived statutory scheme. Devised for the protection of the public as well as of the person committed, that plan, when followed, may yet save this community from a Whitman tragedy.

I would affirm, for I think our appellate function should be exercised with reference to the record as made. If and when conditions justify and the time is ripe, the appellant may again seek his remedy as made available by this court, sitting en banc, in Stewart v. Overholser.[4]

1. References to "the statute" include the various subsections of 24–301 D.C.Code (1961).

2. We have said that he must bear the burden of showing that he is free from such abnormal mental condition as would make him dangerous to himself or the community in the reasonably foreseeable future. Overholser v. Leach, 103 U.S.App. D.C. 289, 292, 257 F.2d 667, 670 (1958), and cases following that rule, such as Miller v. Cameron, 118 U.S.App.D.C. 323, 335 F.2d 986 (1964).

3. Cf. Judge McGowan's opinion, dissenting, in Green v. United States, 121 U.S. App.D.C. 226, 229, 349 F.2d 203, 206 (1965). I thought he was clearly correct in noting that the statute had been passed for the protection of the public, and that custody was not to end until the hospital certified that it safely could be done.

4. 87 U.S.App.D.C. 402, 186 F.2d 339 (1950).