## In re THAW.

### O'MARA v. LAMB.

(Circuit Court of Appeals, Third Circuit. December 21, 1908.)

Nos. 59, 61.

1. WITNESSES (§ 4*) — ATTENDANCE — PERSONS WHO MAY BE REQUIRED TO APPEAR.

A writ of habeas corpus ad testificandum may be properly issued to obtain the testimony of a person confined in jail or in a state hospital for the criminal insane.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 5–7; Dec. Dig. § 4.*]

2. WITNESSES (§ 18*) — "HABEAS CORPUS AD TESTIFICANDUM" — NATURE OF WRIT.

A writ of "habeas corpus ad testificandum" is not the high prerogative writ of habeas corpus, but is merely the ancient common-law precept to bring a prisoner into court to testify, and is the process of the court from which it is issued, though it emanates from a judge in chambers.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 33; Dec. Dig. § 18.*]

For other definitions, see Words and Phrases, vol. 4, p. 3199.]

3. WITNESSES (§ 18*)—HABEAS CORPUS AD TESTIFICANDUM – MOTION TO QUASH.

Where a petition for a writ of habeas corpus ad testificandum was not addressed to any particular judge, and prayed that the witness be brought

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

before the court to testify in a matter therein pending, which prayer was embodied in the writ, a motion to quash the writ was not required to be made before the judge who issued it, but could be properly heard before a judge of the court.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 18.*]

4. BANKRUPTCY (§ 237*) — EXAMINATION OF BANKRUPT — HABEAS CORPUS AD TESTIFICANDUM.

Bankr. Act July 1, 1898, c. 541, § 7, 30 Stat. 548 (U. S. Comp. St. 1901, p. 3424), requiring a bankrupt to attend the first meeting of creditors and to do other things therein enumerated, does not give to the bankrupt or his creditors the right as a matter of law to a writ of habeas corpus ad testificandum to secure the bankrupt's presence and testimony at such meeting; the issuance of such writ being discretionary.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 237.*]

5. BANKRUPTCY (§ 237*) — ATTENDANCE OF BANKRUPT — TESTIMONY — HABEAS CORPUS AD TESTIFICANDUM—DISCRETION.

A bankrupt, while in custody of the proper authorities of New York as an insane person, instituted voluntary bankruptcy proceedings in Pennsylvania, whereupon a writ of habeas corpus ad testificandum was issued to obtain his presence and testimony in Pennsylvania at the first meeting of creditors. There was no issue as to his sanity or insanity, nor as to whether there had been any conclusive adjudication that he was insane, nor was it necessary for the bankruptcy court to pass on either of such questions. *Held*, that an order quashing the writ was a proper exercise of discretion.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 237.*]

Petition for Revision of Proceeding of the District Court of the United States for the Western District of Pennsylvania.

William A. Stone, for petitioner.

Asa Bird Gardiner, for appellee.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

DALLAS, Circuit Judge. ·On August 7, 1908, there was filed in the office of the District Court of the United States for the Western District of Pennsylvania a petition of Henry Kendall Thaw, addressed to Hon. James S. Young, judge of that court, praying that the petitioner be adjudged to be a bankrupt, and on August 12, 1908, such adjudication was made. On September 7, 1908, Roger O'Mara was appointed trustee of the bankrupt's estate, and on the 12th day of October following he filed a petition praying "the court to make an order directing that a writ of habeas corpus ad testificandum be issued to Dr. Robert B. Lamb, superintendent of Matteawan State Hospital of New York, or Dr. Baker, his assistant, directing him to bring the body of the said Henry Kendall Thaw before this honorable court [the District Court aforesaid] at Pittsburg, Pennsylvania, forthwith, and there to have him present to testify in the above matter." This petition was brought to the attention, not of Judge Young, but of Hon. Robert W. Archbald, District Judge for the Middle District of Pennsylvania, who had been designated and appointed "to hold the Circuit and District Courts of the United States in and for the Western District of Pennsylvania, at and during the May term, 1908, of said court, in the aid of Hon. James S. Young, district judge for said dis-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

trict," and thereupon Judge Archbald "ordered that a writ of habeas corpus ad testificandum be issued as therein prayed for, the said Henry Kendall Thaw to be returned again to the said Matteawan State Hospital upon having given in his testimony." In pursuance of this order the writ which is copied in the margin was issued,[1] and on October 19, 1908, Dr. Robert B. Lamb filed a statement in writing addressed to the Honorable James S. Young, Judge, etc., wherein he apprised the court that Thaw was "in custody of the state of New York as a person duly adjudged insane," and demanded that the said writ be "quashed and dismissed." To this statement Mr. O'Mara filed an answer, in which he alleged, inter alia:

"That the service of said writ upon said Dr. Robert B. Lamb, under the direction of the said Honorable Robert W. Archbald, judge, is a part and parcel of the same proceedings (set forth in the answer) begun and started while he was specially designated to act as judge of the court of the Western district of Pennsylvania. * * * Wherefore [the paper concludes] your respondent makes answer and requests that all manner of things pertaining to such proceedings in reference to the writ of habeas corpus ad testificandum directed to Dr. Robert B. Lamb be referred to his honor, Robert W. Archbald, to be heard and determined by him."

Notwithstanding this request, the "per curiam" order now complained of was made by Judge Young,[2] and thereupon O'Mara in-

[1] In the District Court of the United States for the Western District of Pennsylvania.

In the Matter of Henry Kendall Thaw, Bankrupt.

No. 4,290, in Bankruptcy.

Western District of Pennsylvania, United States of America—ss.:

The President of the United States of America, to Dr. Robert B. Lamb, Superintendent of Matteawan State Hospital, New York, or Dr. Baker, His Assistant—Greeting:

We command that you have the body of Henry Kendall Thaw, detained in the Matteawan State Hospital under your custody as it is said, under safe and secure conduct before the judges of our District Court within and for the Western District of Pennsylvania, at Pittsburg, Pennsylvania, forthwith, there to testify the truth according to his knowledge in a certain cause now pending in said court, and then and there to be tried in the matter of the said Henry Kendall Thaw, Bankrupt, at No. 4,290, in Bankruptcy, before the said court, and immediately after the said Henry Kendall Thaw shall have given his testimony in the above-entitled matter that you return him to the said Matteawan State Hospital of New York under safe and secure conduct, and have you then and there this writ.

Witness, the Honorable R. W. Archbald, Judge of the District Court of the United States for the Western District of Pennsylvania, by special assignment, at Pittsburg, Pennsylvania, and the seal of the said court, this 13th day of October, A. D. 1908.                                        Wm. T. Lindsey, Clerk.

[Seal of the U. S. District Court for the Western District of Penna.]

[2] In the District Court of the United States for the Western District of Pennsylvania.

In the Matter of Henry Kendall Thaw, Bankrupt. No. 4,290, in Bankruptcy.

At the City of Pittsburg, in Said District, This 20th day of October, 1908.

Western District of Pennsylvania—ss.:

And now, 20th October, 1908, this matter came on to be heard upon the petition for a writ of habeas corpus ad testificandum, the reply thereto of the

stituted an appeal to this court, which, however, though not formally withdrawn, has properly been abandoned and a petition for revision substituted. Upon that petition the case has been argued and submitted, and the question presented for determination is whether it is true, as the petition avers and the assignment of error upon the appeal had specified, that "the said District Court of the United States, Judge James S. Young presiding, erred in making an order quashing said writ of habeas corpus ad testificandum and directing that the petition therefor be dismissed."

That the writ under consideration was rightfully allowed in the first instance need not be questioned, and we think is not questionable; but in our opinion it is likewise clear that the order under which it was issued was subject to revocation and the writ itself to annulment. This, indeed, is not denied; but it is insisted that, as the writ was issued by direction of Judge Archbald, he alone was empowered to quash it, and that Judge Young, though he "intended no discourtesy to Judge Archbald, * * * had no such power." This proposition could not be sustained, even if the term for which Judge Archbald had been designated to hold court in the Western district had not expired, as in fact it had, when the power to quash was exercised. The contention that the order allowing the writ "was an order of a judge, not of a court, and is signed by a judge, and not by the court," and that "therefore it was not returnable to the court, or to any other judge, but was returnable to Judge Archbald, the judge who issued it," is not well founded. The petition for the writ was not addressed to any particular judge, and it did not pray that Thaw should be brought before Judge Archbald at any place in the Middle district or elsewhere, but that he should be brought before the District Court of the Western district, there to testify in a matter pending in that court, and this prayer the order pursued and the writ in substance embodied.

That writ was not the high prerogative writ of habeas corpus, the great object of which is deliverance from unlawful imprisonment, and which either a court, a justice, or a judge may grant and adjudicate, but was merely the ancient common-law precept to bring a prisoner into court to testify, and it was none the less the process of the court from which it issued because the order for its issuance emanated from a judge at chambers. It was granted and issued to bring a prisoner before the United States District Court at Pittsburg, in order that his testimony might there be taken, and it was directed to the custodian of his person, not that an "inquiry into the cause of restraint of liberty" might be made, but with an object analogous to that sought to be attained by directing a subpoena duces tecum to the custodian of an evidential document, who, of course, upon cause shown, may subse-

respondent, and the answer to the reply by the trustee in bankruptcy of said Henry Kendall Thaw, and after argument by counsel and consideration by the court,

It is ordered that the writ of habeas corpus ad testificandum heretofore issued, directed to said Dr. Robert B. Lamb, Superintendent of the Matteawan State Hospital, in the state of New York, be quashed, and the petition for said writ be dismissed, with costs.                    Per Curiam.

quently be excused from producing it. "If the desired witness is confined in jail [or in a state hospital for the criminal insane] a subpœna would be of no avail, since he could not obey it and his custodian would still lack authority to bring him. Accordingly a writ to the custodian is necessary, ordering the prisoner to be brought to give testimony. This writ of habeas corpus ad testificandum, grantable in discretion at common law, is now usually authorized by statute as a matter of course." Wigmore on Evidence, vol. 4, § 2199.

It is unnecessary, we think, to say anything further in support of our conclusion that the District Court, "Judge James S. Young presiding," did not overstep its lawful authority in quashing the writ in question, unless, as has been suggested, the scope of its general power in this respect was in some way curtailed by section 7 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3424]). That section, no doubt, makes it the duty of a bankrupt to attend the first meeting of creditors, and to do the several other things there enumerated; but it does not follow, as seems to be supposed, that "a writ of habeas corpus ad testificandum * * * to produce the bankrupt for examination * * * is a right which his creditors have, and * * * which the bankrupt also has," and that therefore it must be allowed, upheld, and enforced, regardless of circumstances and conditions. The rule of the common law has always been that this writ, which for centuries has been used to bring prisoners into court to testify, is "grantable in discretion," and we have not been convinced that by forced implication there should be attributed to Congress the unexpressed intent to abrogate that rule, and to take from the courts of bankruptcy their wholesome supervisory control of a process which manifestly is capable of misemployment, perversion and abuse. We accordingly hold that the question raised by the petition to quash was for determination in the exercise of a sound judicial discretion. It was not "matter of law," and therefore is not entitled to consideration upon the petition for revision, by which alone the cause has been brought to this court (Mulford v. Fourth Street National Bank, 157 Fed. 897, 85 C. C. A. 225); but we deem it proper, though unnecessary, to add that in our opinion there was no abuse of discretion. On the contrary, we think the order quashing the writ was imperatively demanded by the circumstances disclosed.

The question was not as to the sanity or insanity of Henry Kendall Thaw, nor as to whether there had been any conclusive adjudication that he was insane. It was not necessary for the court below to pass upon either of these subjects, nor is it requisite that we should do so, and we intimate nothing with respect to them; but certain it is that Thaw was in custody as an insane person, and by the authority of the state of New York. It did not clearly appear that there was an immediate necessity for his testimony, but it was plainly shown that his competency to testify, to say the least of it, was open to very serious question, and " * * * it is not to be presumed that any court would issue a writ of habeas corpus to bring before it a person * * * to testify, who, when brought, could not testify." "This writ of

habeas corpus ad testificandum, under any practice, either in this country or in England, never issued except to bring a witness competent and qualified to testify when brought, and never to bring a person who could not testify when brought, by reason of his being disqualified as a witness." Ex parte Marmaduke, 91 Mo. 228, 237, 4 S. W. 91, 92, 60 Am. Rep. 250.

The appeal to this court, which has not been perfected, is dismissed at the cost of the appellant; and the order to which the petition for revision relates is approved and affirmed.