MABRY *v.* HOYE.

[87 South. 4, No. 21537.]

1. INSANE PERSONS. *Chancery has full jurisdiction under statute over persons of unsound mind.*
   By section 532, Code of 1906 (section 289, Hemingway's Code), the chancery court is given full jurisdiction over cases of idiocy, lunacy, and persons of unsound mind.

2. INSANE PERSONS. *Chancery has statutory jurisdiction of writs of lunacy.*
   Sections 3219-3224, Code of 1906 (sections 5561-5566, Hemingway's Code), confer upon the chancery courts jurisdiction of writs of lunacy, and make provision for the lunacy proceedings and the commitment of an adjudged lunatic to an insane hospital and his confinement therein.

3. INSANE PERSONS. *Superintendent of insane hospital entitled to custody of adjudged lunatic.*
   The superintendent of an insane hospital is entitled to the custody of an adjudged lunatic or insane person committed by order of court to the hospital.

4. INSANE PERSONS. *Sheriff held not entitled to custody of adjudged lunatic from insane hospital on capias under indictment.*
   The sheriff of a county cannot recover the custody of an adjudged lunatic committed to an insane hospital, from the custody of

the superintendent of the hospital upon a *capias* forr the arrest of the lunatic who has been indicted for murder after his commitment to the hospital.

Appeal from circuit court of Lauderdale county.

HON. W. E. BASKIN, Special Judge.

*Habeas corpus* by W. C. Mabry, Sheriff of Newton County, against M. J. L. Hoye, Superintendent of East Mississippi Insane Hospital, to obtain the custody of J. N. Horne, an insane person. Petition dismissed, and petitioner appeals. Affirmed.

*D. M. Anderson,* for appellant.

Now, of course, it is elementary learning that insanity will either exempt a person charged with crime from being tried, or, in the trial, rebut the charge of guilt; that an insane person cannot even plead to an indictment; that if he was insane when he committed the alleged crime he cannot be convicted; and, that if he becomes insane after conviction and before punishment, he cannot be legally punished. But just here I would respectfully call the court's attention to the fact that insanity is a relative term and that there are many tests of insanity known to our liaw.

First, there is the test of present insanity as practiced in the criminal law which implies a disability to employ, control, and discharge counsel. Bishop's Criminal Procedure, Vol. 3, paragraph 66. In the case of *Freeman* v. *People,* a New York case and a leading case on present insanity as a defense, the question was raised as to whether the prisoner was sufficiently sane to take his trial, and the court gave this as the test of the matter. "The question is whether the prisoner had sufficient understanding to comprehend the nature of his trial so as to make a proper defense to the charge." *Freeman* v. *People,* 4 Denio 9, 47 Am. Dec. 216.

Second, there is the right and wrong test applied where insanity as of the time of the commission of the alleged crime is pleaded as a defense. Did the prisoner have sufficient mental capacity at the time of the commission of the alleged crime to know and understand that he was doing wrong? If the affirmative is found by the jury trying the case then the prisoner is not sufficiently insane as to be exempt from punishment, and he is found guilty if this is the only defense. I believe that it is unnecessary, under this heading, to cite any authorities it being so well known that this is not only the test in Mississippi but generally throughout the United States, and wherever the common law prevails.

Thirdly, there is the test of insanity provided by section 3219, and the two following sections, of the Code of 1906. In my opinion a person may have been adjudged a lunatic or insane under the provisions of the above sections of the Code and still be legally amenable to the laws of this state, and subject to be tried, convicted, and punished for their violation. The legal test under these statutes under which J. N. Horne was adjudged a lunatic or insane was whether he was insane or a lunatic at the time of the trial and in need of special treatment. If he was insane to any degree and in need of special treatment to any degree then the jury of freeholders could so find him by their verdict. He may have been insane measured by the terms of these statutes, and he has been so found, and still have mental capacity sufficient to conduct his trial under the tests of the law. Or he may have been insane at the time of the trial, but sane at the time of the commission of the crime with which he stands charged in Newton County, or, still he may have been legally sane at the time he committed the crime alleged in the indictment, and may be sane sufficiently to take his trial when he is arraigned and tried on the indictment. The tests are entirely different as to present insanity, insanity at the time of the commission of the alleged offense, and the

insanity such as the jury of freeholders found Horne afflicted with under the *de lunatico* proceedings.

Our laws contemplate that when a bill of indictment is returned into court charging any person with the commission of a crime that this person shall be tried according to the laws of the land under this indictment; that he shall be tried in the court to which the indictment was returned, and shall make his defense, if any he has, in this court, where all the issues that may be presented and raised shall be determined. On the question of guilt or innocence raised by the trial of the defendant under the indictment the defendant can show whatever defense he may have but it must be shown in the court trying the issue, and not in some other forum.

Was J. N. Horne insane at the time he is alleged to have committed the murder? If he was it is purely matter of defense to be shown on the trial of the issue of his guilt or innocence. Will he be insane when he is arraigned at the bar of the court of Newton county? If he is insane at that time, then this too is purely matter of defense to be determined by the trial court. If the court below was right in remanding J. N. Horne to the custody of Dr. Hoye, the appellee, as against the claim of Mabry to his custody, then it may be said a person can plead his defense of insanity to a charge of murder in a *habeas corpus* proceeding. In the case of *Ex Parte Collier*, 12 So. 597, Chief Justice CAMPBELL said: "The matter which the petitioner desired to litigate is matter of defense on trial of the charge on which he was arrested, and held by the sheriff, and was not available on the *habeas corpus*."

The appellee in the court below offered nothing to resist the demand of appellant for the custody of Horne except the insanity of Horne. This insanity, being purely matter of defense on the issue of guilty or innocent of the crime charged, was wholly irrelevant and incompetent on the issue raised by appellant's demand for his custody by virtue of the *capias* in his hands.

I most respectfully submit that the court below erred in remanding Horne to the custody of Dr. Hoye, and that this case should be reversed and judgment here awarding the custody of Horne to appellant, Mabry.

*McBeath & Miller,* for appellee.

We have diligently searched for a similar case to the one at bar, and we have been unable to find a single case where a man who had been adjudged a lunatic by a court of competent jurisdiction and affirmed by the supreme court and who had committed a crime during that disability had ever been brought before a court of co-ordinate jurisdiction for trial on an indictment during the continuance of said disability.

It is abhorrent to all principles of law and humanity that a man incompetent to plead should be tried or punished. In the case of *Freeman* v. *People*, 47 Amer. Dec. 216, the court so clearly treats these facts, that we quote at length from it:

"If a man," says Sir William Blackstone, "in his sound memory commits a capital offense, and before arraignment for it he becomes mad, he ought not to be arraigned for it; because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried; for how can he make his defense?"

If, after he be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced; and if, after judgment, he becomes of non-sane memory execution shall be stayed; for peradventure, says the humanity of the English Law, had the prisoner been of sound memory he might have alleged something in stay of judgment or execution.

Indeed, it is added, "in the bloody reign of Henry VIII, a statute was made which enacted, that if a person being *compos mentis* should commit high treason, and after-

wards fall into madness he might be tried in his absence, and should suffer death, as if he were of perfect memory.

But this savage and inhumane law was repealed by the statute of 1 and w-ph and M., chapter 10." The true reason why an insane person should not be tried, is, that he is disabled by an act of God to make a just defense if he have one. As is said in 4 Harg. State, Tr. 205: "There may be circumstances lying in his private knowledge, which would prove his innocence, of which he can have no advantage, because not known to the persons who shall take upon them his defense."

The most distinguished writers on criminal jurisprudence concur in these humane views, and all agree that no person, in a state of insanity, should ever be put upon his trial for an alleged crime, or be made to suffer the judgment of the law."

Section 2445, Miss. Code 1906, is as follows: "The writ of *habeas corpus* shall extend to all cases of illegal confinement or detention by which any person is deprived of his liberty, or by which the rightful custody of any person is withheld from the person entitled thereto, except in the cases expressly excepted."

It will be presumed that appellant relies upon, "or by which the rightful custody of any person is withheld from the person entitled thereto" of the above statute, since he does not allege or charge that appellee has withheld the custody of Horne illegally. Said petition not only fails to allege illegal detention of the said Horne but admits that he is being detained in the East Mississippi Insane Hospital for the insane, under the superintendency of Dr. M. J. Hoye.

The return or answer of respondent, shows conclusively, setting out in full the commitment that J. N. Horne was committed to his care and custody by a decree of the chancery court. The cases expressly excepted in section 2445, referred to above, and enumerated in section 2446, Miss. Code, 1906, the last clause being, "nor of any person suf-

fering imprisonment under lawful judgment." If Horne be suffering imprisonment under a lawful judgment, the petition must fail, and no writ should have been issued or after issuance should have been denied upon return made by appellee.

Then the question to be determined is whether or not an inmate of an asylum legally committed is a prisoner. Any person restrained, confined in custody or a captive is a prisoner. (See Words & Phrases, judicially defined, vol. 6, page —.) We submit for this reason alone the writ should have been denied.

Appellant contends that it is elementary learning, that the circuit court has jurisdiction of insane persons indicted for crime, and priority of right to their custody in order that the degree of insanity touching their criminal responsibility may be determined in that forum. He lays down no elementary rule of law, nor does he cite a single authority that would even tend to support such a contention. Such a contention is unsound and untenable, and not supported by any legal authority.

All the authorities hold that where two or more courts have concurrent jurisdiction, the court first to acquire the subject-matter shall retain it until fully and completely adjudicated. It would be a needless consumption of time and a waste of space to cite even the many decisions of this court upon this question, and for the purpose of this appeal it is unnecessary for the reason, that in this case, the question of jurisdiction is settled conclusively by statute. Section 532, Miss. Code 1906, says: "The chancery court shall have full jurisdiction in the following matters and cases; (e) Cases of idiocy, lunacy, and persons of unsound mind; Sections 1538-1539-1540, Miss. Code 1906, refutes both jurisdiction and custody with reference to persons of unsound minds by the circuit court and makes it mandatory upon the circuit court by express provision to surrender and transfer said causes and persons to the chancery court. Quoting from sec-

tion 1539 : "And if the grand jury report such unsoundness of mind and such danger, the court shall forthwith give notice of the case to the chancellor or clerk of the chancery court, whose duty it shall be to proceed with such person and his estate according to the law relating to persons of unsound mind."

It would indeed be a travesty, should this court permit the circuit court in the face of express statutory provision, to break down the doors of that most sacred retreat, where kept and treated are those poor unfortunate human beings disabled by an act of God, its inmates taken from its care and custody, and ruthlessly thrown into the cell of a county jail to await trial on an indictment, returned long after he had been committed to the care and custody of said institution.

The motion to quash the writ should have been sustained, for the reason as set out in the first ground.

Sykes, J., delivered the opinion of the court.

W. C. Mabry, the sheriff of Newton county, sought by means of *habeas corpus* proceedings to obtain the custody of J. N. Horne, who was insane and confined in the East Mississippi Insane Hospital. Dr. M. J. L. Hoye as superintendent of this hospital was made the defendant. The petition alleged that the grand jury of Newton county had returned a bill of indictment against Horne charging him with murder. The cause was tried on pleadings and proof. The record shows that Horne had been tried and adjudged a lunatic under section 3219, Code of 1906, section 5561, Hemingway's Code. After being adjudged a lunatic he was indicted for murder. In this lunacy proceeding an appeal was prosecuted to this court and the decree of the chancery court adjudging Horne insane was affirmed. Under this decree and in pursuance of section 3220, Code of 1906, section 5562, Hemingway's Code, Horne was placed in this insane hospital, and has been confined in that insti-

tution since his commitment. On the hearing of this petition Dr. Hoye testified that Horne was still insane and growing worse. The petition was heard before Hon. W. E. Baskin, as special judge, and the petition was dismissed and Horne remanded to the custody of the superintendent of the insane hospital. From which judgment this appeal was prosecuted.

The question presented to us for decision is whether or not one who has been adjudged a lunatic and committed to an insane hospital may be taken from the custody of the superintendent of this hospital upon a *capias* and put upon trial for a crime, for which he was indicted after being adjudged a lunatic.

By section 532, Code of 1906, section 289, Hemingway's Code, the chancery court is given full jurisdiction over "cases of idiocy, lunacy and persons of unsound mind." Sections 3219-3224, Code of 1906, sections 5561-5566, Hemingway's Code, make provision for lunacy proceedings and the commitment of an adjudged lunatic to an insane hospital. Section 3225, Code of 1906, section 5567, Hemingway's Code, makes provision for a warrant for the arrest of an escaped lunatic and his return to this hospital. Section 3226, Code of 1906, section 5568, Hemingway's Code, provides for the discharge of a person from these hospitals who has recovered his sanity. Section 1538, Code of 1906, section 1300, Hemingway's Code, makes it the duty of a conservator of the peace when a prisoner is brought before him charged with the commission of an offense, and when it appears that the prisoner was insane when the offense was committed, to remand the prisoner to custody and report the case to the chancellor or the clerk of the chancery court, whose duty it is to proceed with the case according to the law relating to persons of unsound mind.

From an examination of the statutes above enumerated it is clear that the legislature intended to make the chancery court the guardian of insane people. Horne was

duly adjudged insane by the chancery court and by its order committed to the custody of the superintendent of the hospital. He is properly held under the order of the chancery court by the superintendent of this hospital. A lunatic cannot be tried for a crime.

The learned special judge so held, and the judgment is affirmed.

*Affirmed.*