Lawrence W. GREEN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17841.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 7, 1964.

Decided June 23, 1965.

Petition for Reconsideration Denied Nov. 4, 1965.

Mr. Arthur G. Lambert, Washington, D. C. (appointed by this court), for appellant.

Mr. Frank Q. Nebeker, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Joseph A. Lowther and Alan Kay, Asst. U. S. Attys., were on the brief, for appellee. Mr. William H. Collins, Jr., Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and WASHINGTON, DANAHER, BASTIAN,* BURGER, WRIGHT and McGOWAN, Circuit Judges, sitting *en banc.* Circuit Judge FAHY did not participate in the hearing, consideration or decision of this case.

BASTIAN, Senior Circuit Judge, with whom DANAHER, BURGER and McGOWAN, Circuit Judges, concur.

On October 24, 1960, appellant Lawrence W. Green was indicted on four counts of robbery, § 22–2901 D.C.CODE. He pleaded not guilty to each count. Prior to trial, Green's motion for a mental examination to determine his competency to stand trial, pursuant to § 24–301(a) D.C.CODE, was granted by the District Court. Appellant was thereupon committed to Saint Elizabeths Hospital for a psychiatric examination.

Subsequently, on March 17, 1961, the hospital informed the District Court by letter that appellant was "mentally competent to understand the proceedings against him and to assist properly with counsel in his own defense." The hospital was further of the opinion that appellant was suffering from a mental disease on the dates of the alleged criminal acts, and that such acts "could have been a product of the mental disease."

Appellant was tried on April 10, 1961, and found not guilty by reason of insanity. Pursuant to § 24–301(d) D.C. CODE, he was committed to St. Elizabeths Hospital.

On August 9, 1962, while still a patient at the hospital, appellant was arrested in the 500 block of 4th Street, S. E., Washington, on a charge of robbery.[1] His

---

* Circuit Judge Bastian became Senior Circuit Judge on March 17, 1965.

1. Appellant had "eloped" from St. Elizabeths, but he was not returned to the hospital upon his arrest. Instead, he was confined in the District of Columbia Jail from the time of his arrest until after his trial and conviction, with the exception of the period spent in St. Elizabeths pursuant to the grant of his motion for a mental examination. This continued custody by the police, rather than in St. Elizabeths, appears to us contrary to the intent of Congress as reflected in the distinctive standards provided in § 301(e) for the conditional or unconditional termination of a § 301(d) commitment. While we do not find that this apparent defect in the custody of appellant deprived the District Court of jurisdiction to try him for the crimes with which he was charged, it does seem to us incon-

arrest resulted from a telephone call from an employee of the Berens Realty Company informing police that an individual answering appellant's description had just robbed the real estate office. The stolen money was found in appellant's possession at the time of the arrest.

Subsequently, on September 28, 1962, appellant was indicted on three counts, charging the commission of robbery on July 22, August 2, and August 9, 1962. Appellant pleaded not guilty to each count. Once again, prior to trial, appellant moved for, and was granted, a psychiatric examination at St. Elizabeths to determine his competency to stand trial. On February 12, 1963, the hospital reported to the District Court, in relevant part, as follows:

"As a result of our examinations and observations, it is our opinion that Lawrence W. Green is mentally competent to understand the nature of the proceedings against him and to assist counsel properly in the preparation of his defense. It is, further, our opinion that he is, and was, on July 22, August 2 and 9, 1962, suffering from a mental illness, Schizophrenic Reaction, Chronic Undifferentiated Type (In Remission); however, the alleged criminal offenses with which he is charged, if committed by him, were not the product of this mental illness."

Appellant was tried before a jury, and on April 1, 1963, was found not guilty on count 1, and guilty on counts 2 and 3. On April 23, 1963, appellant was sentenced to a term of five to fifteen years imprisonment. It was further provided that appellant should be returned to St. Elizabeths until such time as the order of commitment resulting from Green's 1961 trial was vacated.

Appellant attacks the validity of his April 1963 conviction for robbery on the ground that, since he had been committed to St. Elizabeths Hospital pursuant to § 24–301(d) following his 1961 acquittal by reason of insanity, a hearing was required to determine his competency to stand trial in 1963; that no hearing was held; and that the District Court was therefore without jurisdiction to try him.

■■ We reject appellant's contention for the reasons given in Whalem v. United States, 120 U.S.App.D.C. 331, 346 F.2d 812, decided April 23, 1965. Prior to both the 1961 and the 1963 trials, appellant was referred to St. Elizabeths for mental examination in accordance with the provisions of § 24–301(a), resulting, in both instances, in certification by the hospital that appellant was competent to stand trial. The 1963 certification was not objected to by either appellant or the Government and, since commitment pursuant to § 24–301(d) after a verdict of not guilty by reason of insanity is not an adjudication of insanity or incompetency,[2] our holding in *Whalem* sets appellant's argument to rest. "The court did not in terms hold that [appel-

---

sistent with Congress' purpose to protect the community to permit St. Elizabeths' custody to be so ignored. In our view, appellant should have been returned to St. Elizabeths immediately after his arrest and preliminary appearance before the magistrate. If the prosecutor wished to have appellant available for trial, he clearly could have sought his conditional or unconditional release pursuant to the standards and procedures of § 301(e). A possible alternative for the prosecutor perhaps is contained in § 303(a), which in terms appears to provide a procedure whereby all persons confined in mental hospitals, irrespective of the nature of their confinement, can be made available

to be tried on criminal charges upon certification of their competence to stand trial. The availability of this latter course would seem to turn upon whether Congress can fairly be thought to have intended § 303(a) to apply to persons committed under § 301(d).

2. As the court noted in Overholser v. Leach, 103 U.S.App.D.C. 289, at 292, note 4, 257 F.2d 667, at 670, note 4 (1958): "It should be remembered that the standards and tests for: (1) exculpation from criminal responsibility; (2) competence to stand trial; and (3) release from hospital custody after a verdict of not guilty by reason of insanity, are separate and distinct."

lant] was competent. But its ruling to this effect is clear from its actions. In any event, no timely objection was made." These words, written by Judge Wright in his concurring opinion in Cooper v. United States, 119 U.S.App.D.C. 142, 143–144, 337 F.2d 538, 539–540 (1964), represent a correct statement of the law and one which we have followed in this case. Accordingly, we uphold the trial court in this respect.

■ However, this does not dispose of this case because, during oral argument before the court *en banc,* the Government confessed error in light of the holding of the Supreme Court in Jackson v. Denno, 378 U.S., 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and that Court's disposition of Muschette v. United States, 378 U.S. 569, 84 S.Ct. 1927, 12 L.Ed.2d 1039 (1964), both decided after the trial of this case in the District Court. In *Jackson,* the Supreme Court held that, when the voluntariness of a confession is questioned, a hearing must be held by the judge out of the presence of the jury to determine whether or not the confession was, in fact, voluntary. Only if the judge finds the confession to have been given voluntarily may it be introduced into evidence before the jury. The Government informs us that the procedure required by *Jackson* was not followed in all respects, and that in view of the Supreme Court's disposition of *Muschette* there was no alternative to requesting a remand. The Government's position, which our own examination of the respective records has confirmed, is that here, as in *Muschette,* although the trial judge did hold a hearing out of the presence of the jury on the defendant's motion to suppress the confession, no findings of any kind were made. In each case the trial judge simply denied the motion at the conclusion of the hearing. The error in this procedure is that in *Jackson* the Supreme Court pointed out that in order to provide a record adequate for appellate review on the issue of voluntariness, the trial judge must resolve any disputed questions of fact underlying voluntariness *vel non* and make a specific finding that the confession was or was not voluntary. See Hutcherson v. United States, 122 U.S.App.D.C. ——, 351 F.2d 748, decided by this court May 11, 1965.

Accordingly, we remand to the District Court for determination by the trial judge as to whether or not the confession used against appellant in his trial was voluntary. If the confession is found to have been voluntary, the conviction will be affirmed. On the other hand, if the confession is found to have been involuntary, the conviction will be reversed and the case remanded for a new trial.

Remanded for proceedings not inconsistent with this opinion.

Circuit Judge WASHINGTON did not participate in this opinion but reserves the right to file a statement of his views at a later date.

BAZELON, Chief Judge, with whom WRIGHT, Circuit Judge, concurs, dissenting.

I think this robbery conviction must be reversed for new trial, for the reasons stated in my dissent from this court's recent opinion in Whalem v. United States, 120 U.S.App.D.C. 331, 346 F.2d 812, decided April 23, 1965. No indication appears in the record that the question of competency, raised by defense counsel's motion for mental examination, was ever judicially resolved. Here, as in *Whalem,* psychiatric opinion on the issue was expressed in the most conclusory boiler-plate language. Thus the record was fatally deficient for the required judicial assessment of competency. The absence of any judicial inquiry on the competency issue in these circumstances amounts to an abuse of discretion, and Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), requires a new trial. This disposition would settle as well the Jackson v. Denno point, on

which the Government has commendably confessed error.

Here, as in *Whalem,* there are special circumstances which required inquiry into competency even assuming a report of the type here submitted could in some cases be sufficient. The crimes with which appellant was charged occurred while he was a patient at St. Elizabeths Hospital.[1] Two years earlier, he had been committed to the Hospital by court order pursuant to D.C.CODE § 24–301(d), following acquittal by reason of insanity on similar charges. I think the presumption of continuing insanity raised by prior civil commitment in *Whalem,* and relevant in my view to the competency issue, is also present here. Although the standards for deciding competency to stand trial and criminal responsibility are

different—an acquittal by reason of insanity is not an adjudication either of incompetency or of insanity—the legislative history of § 24–301 reveals that the rationale of mandatory commitment is a presumption of continuing insanity:

> Where accused has pleaded insanity as a defense to a crime, and the jury has found that the defendant was, in fact, insane at the time the crime was committed, it is just and reasonable in the Committee's opinion that the *insanity, once established, should be presumed to continue and that the accused should automatically be confined for treatment until it can be shown that he has recovered.*[2]

Thus the original commitment based on enough evidence to establish an insanity defense, and the continued confinement

---

1. I agree with the majority that, to bring appellant to trial, the Government should have obtained a judicial order for his temporary release. St. Elizabeths has no discretion to release, without judicial authorization, patients committed pursuant to D.C.CODE § 24–301(d). See Hough v. United States, 106 U.S.App.D.C. 192, 196, 271 F.2d 458, 462 (1959). In my view, however, the order ordinarily ought not to be for a conditional or unconditional release pursuant to § 301(e). It would be a remarkable coincidence if the improvement justifying release occurred exactly when the patient engaged in further unlawful conduct. It might therefore be appropriate for the Government to apply to the District Court for a writ of habeas corpus ad prosequendum, pursuant to 28 U.S.C. § 2241(c) (5), to obtain at least temporary custody. See Carbo v. United States, 364 U.S. 611, 615, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961).

   Although ordinarily employed to allow prosecution on federal criminal charges of a prisoner incarcerated in State prison, see, *e.g.,* United States ex rel. Moses v. Kipp, 232 F.2d 147 (7th Cir. 1956); Yodock v. United States, 101 F.Supp. 480 (M.D.Pa.1951), affirmed, 196 F.2d 1018 (3d Cir. 1952), this writ is also available to seek the release for trial of one who is legally committed to a mental hospital, Ashley v. Pescor, 147 F.2d 318, 321 (8th Cir. 1945); *cf.* Mabry v. Hoye, 124 Miss. 144, 87 So. 4 (1921). This suggested procedure would be useful for reviewing the Government's decision to prosecute rather than continue the accused's con-

finement in hospital until he is without mental disorder and no longer dangerous. Issuance of the writ of habeas corpus ad prosequendum, like issuance of the writ of habeas corpus ad testificandum, is within the discretion of the court. See In re Thaw, 166 F. 71 (3d Cir. 1908); *cf.* Mabry v. Hoye, supra. Such decisions should be reviewable because they involve issues of public policy affecting the medical care and treatment of the individual, public safety, and the operation and consistency of our laws pertaining to mental disorder. But whether the Government chooses to adopt the procedure outlined here, to decline prosecution, or to follow some other course, proper administration of the criminal law requires that respect and effect be given to prior judicial orders of commitment.

2. Emphasis supplied. S.REP.No. 1170, 84th Cong., 1st Sess. 13 (1955); H.R.REP. No. 892, 84th Cong., 1st Sess. 13 (1955), quoted in Lynch v. Overholser, 369 U.S. 705, 717, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962). The "Committee" to which the quotation refers was established by the Council on Law Enforcement in the District of Columbia to inquire into "the substantive and procedural law of the District of Columbia bearing on mental disorders as a defense in a criminal prosecution." Both congressional reports adopted the report of the Committee. And see Orencia v. Overholser, 82 U.S. App.D.C. 285, 287, 163 F.2d 763, 765 (1947); Barry v. White, 62 App.D.C. 69, 64 F.2d 707 (1933).

together raise at least sufficient doubt concerning Green's mental condition to have required an informed judicial determination of competency to be made before trial.[3]

---

**3.** While appellant was serving sentence in this case, he was recommitted to St. Elizabeths Hospital, this time by prison officials acting pursuant to D.C.CODE § 24–302. While this may not be relevant to appellant's competency at trial, it hardly quiets my doubts on the issue.