**Lawrence W. GREEN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 20288.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 21, 1967.

Decided Dec. 29, 1967.

Messrs. Arthur G. Lambert, and Fred Warren Bennett, Washington, D. C. (both appointed by this court) for appellant.

Mr. Lee A. Freeman, Jr., Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Miss Carol Garfiel, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, DANA-HER, Circuit Judge, BASTIAN *, Senior Circuit Judge, and BURGER, WRIGHT, MC-GOWAN, TAMM, LEVENTHAL and ROBIN-SON, Circuit Judges, sitting *en banc*.

BASTIAN, Senior Circuit Judge:

This is an appeal from the District Court after a hearing on remand for an explicit determination by the trial judge as to the voluntariness of the oral confession introduced at defendant's (appellant's) trial as required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). After determining that the defendant was competent to participate in the hearing, the trial judge found that beyond a reasonable doubt the confession was voluntarily given. It is from this determination that defendant appeals, (1) challenging the determination of voluntariness, (2) asserting an unnecessary delay before preliminary hearing, during which delay the oral confession was obtained, and (3) contending that this court's *en banc* determination on the first appeal that the facts did not obligate the trial judge *sua sponte* to conduct a competency hearing is now invalidated by the Supreme Court's decision in Pate v. Robinson,

* Sitting by authority of 28 U.S.C. § 46, as amended Nov. 13, 1963.

383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). As we cannot accept these contentions, we affirm.

The factual background of this case is to be found in the prior opinions of this court dealing with the current indictment, Green v. United States, 122 U.S.App.D.C. 33, 351 F.2d 198 (1965), and with a previous indictment, Green v. United States, 121 U.S.App.D.C. 226, 349 F.2d 203 (1965). The case now before us began with Green's arrest on August 9, 1962, and indictment on three counts of robbery, committed after he had "eloped" from St. Elizabeths Hospital. Green had been committed to the hospital in 1961 pursuant to D.C.CODE § 24–301(d) after being found not guilty by reason of insanity on a four-count robbery charge. This earlier finding and commitment had followed a mental examination and determination, pursuant to D.C.CODE § 24–301(a), that, although he was competent to stand trial, his alleged criminal acts could have been a product of the mental disease from which he was suffering at the time of such acts.

After his indictment in the present case, appellant again was granted a ninety-day psychiatric examination at St. Elizabeths under § 24–301(a). The determination of the examination was that appellant was competent to stand trial and that, although mentally ill at the time of the alleged offenses, such acts were not the product of that illness. Appellant was tried and convicted by a jury on two counts of robbery. He was then returned to St. Elizabeths pending vacation of the commitment resulting from his 1961 trial. Upon Green's appeal from this conviction, we sua sponte ordered an en banc hearing. On that appeal, Green attacked his conviction on the ground that no sua sponte hearing was conducted by the trial judge to determine competency. We rejected this contention, based on the specific facts of this case and our earlier opinion in Whalem v. United States, 120 U.S.App. D.C. 331, 346 F.2d 812 (1965), cert. denied, 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed. 2d 100. The trial judge had conducted a voluntariness hearing upon appellant's motion to suppress the confession, but he dismissed the motion without making a specific finding of voluntariness. We remanded on a confession of error by the Government in light of the requirement of Jackson v. Denno, supra, decided subsequent to the trial in this case, that a specific finding regarding voluntariness must be made by the trial judge in all such voluntariness hearings. Our remand was specifically for the purpose of such a determination, with directions for affirmance of the conviction if the confession was found to have been voluntary.

On remand, an extensive seven-day voluntariness hearing was conducted, covering in detail the events preceding and subsequent to appellant's arrest and confession and the circumstances surrounding the confession, with testimony from one of the victims and two of the arresting officers, and with lengthy testimony from five psychiatrists regarding appellant's mental condition at that time. With this record as well as that of the original trial before him, the trial judge made determinations that appellant was competent to participate in the remand hearing and that the confession used against him at the trial was voluntary beyond a reasonable doubt. Regarding the circumstances of the robbery, the trial judge made findings of fact that appellant was arrested within three and one-half blocks of the scene of the crime about five minutes after its commission, and in possession of incriminating evidence. He further found that appellant was taken immediately into the police station (directly in front of which he had been arrested), then transported to the scene of the crime and identified by the victims, and returned to the police station, all within thirty to forty-five minutes. Regarding the confession, he further found as a fact that, while at the realty office and while en route back to the police station, appellant made the incriminating statements constituting the oral confession, before all of which he

had been warned that he need not make any statement and that any statement made by him could be used against him. Regarding voluntariness, the trial judge found from the record that appellant's statements were calm and rational, and his answers responsive; that his demeanor was normal in every respect; and that no promises, threats, assault, brutality, artifice or trickery were used to induce any statement or admission. From the extensive psychiatric testimony, the trial judge made findings that there was no credible psychiatric testimony that the statements were involuntary,[1] and that appellant had the mental capacity to make the statements voluntarily. Whereupon, an order was entered dated June 6, 1966, finding that the confession was voluntary, and affirming the judgment of conviction pursuant to the directive of our *en banc* opinion.

■ At the trial, appellant's counsel objected to the oral confession as being involuntary due to appellant's mental condition, which contention was rejected by the trial judge. This was not challenged on appeal. Rather, as we have noted, the Government cited the lack of an explicit finding regarding voluntariness by the trial court, giving rise to the remand hearing. Appellant now contends, regarding the voluntariness of his incriminating oral statements, not only that under "traditional tests" was the trial judge's finding erroneous, but, again, that appellant's mental illness had made him incapable of "understanding the meaning and effect of his confession," drawing this language from People v. Tipton, 48 Cal.2d 389, 309 P.2d 813 (1957), cert. denied, 355 U.S. 846, 78 S. Ct. 71, 2 L.Ed.2d 55 (1958). Here, however, the record on remand fully supports the finding of voluntariness beyond a reasonable doubt made by the trial judge, such finding being completely consistent with the following tests: Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961) (product of an essentially free and unconstrained choice); Lynumn v. State of Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963) (whether the defendant's will was overborne); Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963) (that the confession was made freely, voluntarily, and without compulsion or inducement of any sort).

■ This is not to deny that the accused's mental condition is one of the factors bearing on this admissibility question. McAffee v. United States, 72 App.D.C. 60, 111 F.2d 199 (1940). Although neither this court nor apparently any other federal court has purported to set out or describe a standard which must be specially and additionally enunciated and met in determining voluntariness whenever mental capacity is urged as a defense, the case of Blackburn v. State of Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960), where mental competence was at issue, does indicate that a defendant's confession will be deprived of its voluntary nature when his mental illness is such "that the confession most probably was not the product of any meaningful act of volition." In this case, however, findings of fact were made and supported by the record which clearly indicate that appellant's will was not overborne, and which fully satisfy the prerequisites of voluntariness, including the language cited by appellant and that noted above.[2]

■ On remand appellant, for the first time, sought to introduce an issue of "unnecessary delay" prior to preliminary hearing, violative of FED.R.CRIM.P. 5(a), during which time the confession used at trial was obtained in violation of Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). This contention is absent from the original trial and appeal, and clearly was not

---

1. The trial judge disregarded the testimony of one of the psychiatrists called by appellant "because of his equivocation, unresponsiveness and parrying."

2. Such findings by the District Court must, of course, stand unless they are "clearly erroneous." Jackson v. United States, 122 U.S.App.D.C. 324, 353 F.2d 862 (1965).

within the scope of the explicitly directive remand order of this court. Green v. United States, 122 U.S.App.D.C. at 36, 351 F.2d at 201. Furthermore, the *en banc* disposition of that prior appeal, which focused on the admissibility of the confession, would seem to have settled the question. Certainly, neither the majority opinion nor the dissent alludes to any such "unnecessary delay" which, had it been manifest, would have compelled immediate reversal. Consistent with the narrow scope of our remand, it would appear that the trial judge properly considered a possible violation of Rule 5(a) only as it indirectly related to voluntariness.[3]

 To the extent, however, that "unnecessary delay" contentions may be considered here in regard to the voluntariness of appellant's confession, which was, of course, the basis of a motion to suppress at trial and of the remand hearing, we note that the record manifestly precludes any finding of delay violative of Rule 5(a). The incriminating statements introduced in evidence were made during a continuing conversation between appellant and police officers which took place during a short ride from the precinct to the real estate office that was the scene of the crime, for the purpose of a prompt identification almost immediately after the crime. *Mallory* precludes statements made during an unnecessary delay in taking an accused before a judicial officer. On the facts surrounding the arrest and identification in this case, there is nothing to suggest that appellant's utterances were other than "spontaneous" or "threshold" declarations not to be precluded under *Mallory*. Ramey v. United States, 118 U.S.App.D.C. 355, 336 F.2d 743 (1964), cert. denied, 379 U.S.

840, 85 S.Ct. 79, 13 L.Ed.2d 47.[4] *See also* Wise v. United States, 127 U.S.App.D.C. 279, 383 F.2d 206 (Decided July 27, 1967); Perry v. United States, 102 U.S. App.D.C. 315, 253 F.2d 337 (1957), cert. denied, 356 U.S. 941, 78 S.Ct. 785, 2 L. Ed.2d 816 (1958).

 Finally, appellant contests our earlier rejection, based on *Whalem*, of the contention that his committal to St. Elizabeths Hospital following his 1961 insanity acquittal made requisite a judicial hearing to determine his competency to stand trial in 1963. His present attack is based on the proposition that the subsequent decision in Pate v. Robinson, *supra*, emasculates our ruling in *Whalem*. We reject this contention.

 The issue before us at our first *en banc* hearing in this case was the same as that in *Whalem*, which reasoning we need not restate here. We need only to determine that *Pate*, while giving constitutional proportion to the accused's right to a judicial competency hearing when it is either requested or compelled as a matter of judicial due process on the facts of a given case, clearly does not remove from judicial discretion determination regarding the *sua sponte* conduct of such a hearing, and that the question in all such cases remains whether the trial judge has abused his discretion in the particular case before him.

 In *Whalem* we took great care to point out that hospital certification of competency, without objection, does not mean that the accused *must* proceed to trial, but that the trial judge *may* and in given cases *should* conclude that such a report alone is inadequate, and *sua sponte* request an elaboration or order a hearing. 120 U.S.App.D.C. at 335, 346

3. In Coor v. United States, 119 U.S.App. D.C. 259, 340 F.2d 784 (1964), where we were presented with a "mirror" case factually to that presently before us, the appellant was not allowed to introduce a voluntariness issue at a remand hearing called to determine a *Mallory* question. It was deemed to be outside the scope of the hearing and not properly before the court on appeal from the re-

mand, since no objection based on voluntariness had been raised at the trial. The same reasoning would seem properly to apply with equal force here.

4. We also note that the burden of showing an unreasonable delay rests upon appellant. See Trilling v. United States, 104 U.S.App.D.C. 159, 260 F.2d 677 (1958) *(en banc)*.

F.2d at 820. We noted that the question on appeal then becomes whether the failure to hold such a hearing constitutes, on the facts of a given case, an abuse of the trial judge's discretion. (Indeed, this determination, on the specific facts in *Whalem,* marked the sole point of departure by the dissent in that case.) Subsequent cases in this jurisdiction and elsewhere, including *Pate,* are entirely consistent with and reflective of this reasoning. Hence, in Wider v. United States, 121 U.S.App.D.C. 129, 348 F.2d 358 (1965), decided subsequent to *Whalem* but prior to *Pate* where counsel for the accused voiced at trial strong misgivings regarding competency, we noted that whether or not we could consider such expression as an "objection" to the competency report there in evidence so as to require a judicial hearing, the fact of such misgivings alone called for such a hearing and the trial judge abused his discretion by not further investigating the accused's competency *sua sponte.*[5] Pouncey v. United States, 121 U.S.App.D.C. 264, 349 F.2d 699 (1965), decided prior to *Pate* and Hansford v. United States, 124 U.S.App.D.C. 387, 365 F.2d 920 (1966), decided subsequently; both also show the consistency of the *Whalem* and *Pate* decisions. In *Pouncey* and *Hansford,* the fact of the accused's behavior subsequent to a report of competency, and indeed subsequent to the beginning of the trial, undercut the report's conclusions and "predictive value." *Hansford,* 124 U.S. App.D.C. at 392, 365 F.2d at 925, note 14. In *Pouncey,* this fact consisted of erratic behavior by the accused during the trial, observable by the judge and reported by counsel; in *Hansford,* it consisted of drug withdrawal symptoms during trial. Both cases are reasoned in full consistency with the directives of *Whalem.*

In Pate v. Robinson, *supra,* the competency finding was a stipulation that the Director of the Behavior Clinic of the Criminal Court of Cook County in effect had found Robinson competent two or three months before trial. Beyond the facts of *Whalem* or of the case now before us, the court in *Pate* found that throughout the proceeding counsel for the accused had "insisted that Robinson's present sanity was very much in issue," and that "the question of Robinson's mental competence to stand trial" was necessarily placed in issue by his counsel. 383 U.S. at 384, note 6, 86 S.Ct. at 841. Indeed, this would seem to represent a far more extreme case than the statements of defense counsel regarding accused's inability to communicate, which we indicated in *Wider, supra,* were enough as additional facts, if not as formal objections, to require further judicial investigation by the trial judge regarding competency. Further, in *Pate,* the state was insisting that Robinson had waived any competency defense by failing to request specifically a hearing under the Illinois statute, a contention we have long rejected, Seidner v. United States, 104 U.S.App.D.C. 214, 260 F.2d 732 (1958), and which we clearly rejected again in *Whalem.* Of course, such comparisons would not be pertinent if *Pate,* abstracted from the facts of that particular case, had enunciated a general constitutional requirement for *sua sponte* judicial competency hearings, beyond the realm of any trial court discretion. It does not appear to us that *Pate* even suggests such a ruling. *Pate* simply has given "constitutional proportions" to the denial of a judicial competency hearing not only when specifically requested or when a certification of competency is challenged, but now also when the particular facts of a given case would make it an abuse of the trial judge's discretion not to hold such further investigation by the court into the accused's mental capacity, despite a prior medical certification of competency and whether that certification be conclusory or otherwise.

---

5. Compare Floyd v. United States, 365 F.2d 368 (5th Cir. 1966), where the issue arose under 18 U.S.C. § 4244, and the trial judge was held to have erred in saying that a medical report of competency *conclusively* showed the accused to be entitled to no relief under a 28 U.S.C. § 2255 proceeding; and Kaause v. Fogliani, 421 P.2d 949 (Nev.1966), where there had been no certification of competency.

■ In recapitulation, our previous opinion in *Green* gave a particular application to the law of this circuit. That law, which has two aspects, may be summarized as follows: (1) There is no error in foregoing a hearing "in the absence of objection by the defendant and of any other circumstances which render the superintendent's opinion substantially suspect."[6] (2) Where there are circumstances that cast substantial suspicion on the superintendent's opinion, however, the trial judge must *sua sponte* hold a hearing.[7]

We do not understand *Pate* to lay down any substantially different standard, though it does predicate the hearing required by this standard on constitutional rather than statutory grounds. In *Green*, therefore, this court has already ruled *en banc* that no circumstances rendering the hospital's opinion substantially suspect came to the court's attention. Since the general standard in effect in this circuit was not affected by *Pate*, we see no reason for an *en banc* reconsideration of a previous *en banc* determination that application of that standard to Green's case properly led to the conclusion that no hearing was required.

■ In determining competency for trial the court must have adequate information on which to base a decision. In 1965, after *Whalem* and the first *Green* case, the Judicial Conference, after study, adopted the following recommendation of its committee on mental examinations:

> The report of a court-ordered pre-trial mental examination should be made in substantial detail, recounting what was done to get at the facts concerning the accused's mental condition and what those facts are, not merely the conclusions the psychiatrists have drawn from the facts.

While this recommendation has no binding impact, it expresses what this court had from time to time indicated in opinions.

■ In an exchange of correspondence between the Chief Judge of the District Court and the then Superintendent of St. Elizabeths Hospital, Dr. Cameron, the Superintendent suggested that the Hospital would readily make its full records available to the District Court whenever requested. Dr. Cameron indicated that the records were available to defense counsel on subpoena. We assume the District Court will make use of these records whenever a need for additional information is indicated. We note, however, that under the statute the accused has always had an absolute right to compel a full evidentiary hearing on the competency issue.

Accordingly, we affirm the District Court's finding on remand of voluntariness and its subsequent affirmance of the conviction according to the directive of this court.

Affirmed.

J. SKELLY WRIGHT, Circuit Judge, with whom BAZELON, Chief Judge, concurs, dissenting and concurring in part.

I

*Pate v. Robinson*, 383 U.S. 375, 86 S. Ct. 836, 15 L.Ed.2d 815 (1966), teaches that where there is substantial evidence indicating that an accused may be incompetent to stand trial, due process requires that the trial court order a hearing to determine his competence. The majority opinion, by watering down this constitutional right and subjecting it to "the trial court's discretion," finds that the evidence in this case did not require a hearing on competence.[1] I respectfully disagree.

---

6. See *Whalem*, 120 U.S.App.D.C. at 335, 346 F.2d at 816, note 6.

7. Hansford v. United States, *supra;* Pouncey v. United States, *supra*.

1. *See* People v. Pennington, Cal., 58 Cal. Rptr. 374, 381, 426 P.2d 942, 949 (1967),

in which the California Supreme Court held that where there is "substantial evidence of present mental incompetence, [the defendant] is entitled to a [competency] hearing as a matter of right under Pate v. Robinson * * *. The judge then has no discretion to exercise."

The record shows that Green had a long history of mental illness. In April 1961 he was found not guilty by reason of insanity by a jury in the District of Columbia. In that case the Government doctors testified that Green was suffering from schizophrenia with paranoid tendencies. He was committed to St. Elizabeths, from which he escaped and committed the crime for which he now stands convicted.

After being returned to St. Elizabeths, Green was found still to be suffering from schizophrenia (in remission), a not surprising diagnosis since the doctors had not authorized his discharge from the hospital. Several weeks before the trial of this case the hospital reported its boiler plate findings on Green to the District Court, adding its further opinion, without explication, that he was competent to stand trial. No objection was made to the hospital report, no ruling was made by the court on Green's competence to stand trial, and that issue apparently dropped from the case.[2]

The trial was largely taken up with medical evidence focusing, not on competence at the time of trial, but on insanity at the time the act was committed. The evidence as to commission of the act itself was uncontroverted. On the day he escaped from St. Elizabeths Green, using a toy gun, robbed a real estate office in Southeast Washington in the vicinity of the hospital and his mother's home. The employee victim of the robbery telephoned the Fifth Precinct police station, less than a block away, describing the robber. As the policeman on the telephone was taking the description, he looked out the window and saw Green passing carrying a brown paper bag in which the loot was found upon his arrest outside the station house.

All of the psychiatrists testifying on trial seemed to agree generally that Green was suffering from schizophrenia at the time he was examined some weeks before the trial. All but one also testified that the illness was in remission at that time. Some of the psychiatrists testified, without contradiction, that under stress and strain symptoms of the disease in remission may recur. No questions were asked of any witnesses whether his trial could have reactivated Green's symptoms of mental illness or, indeed, whether in fact they had been reactivated from any cause.

This evidence does not show Green was incompetent to stand trial. But that, of course, is not the issue here. This evidence does show that on trial the competence question was ignored in spite of the bizarre circumstances surrounding his offense, including the fact that he was an escapee from a mental institution at the time. See Floyd v. United States, 5 Cir., 365 F.2d 368 (1966); Krause v. Fogliani, Nev.Sup.Ct., 421 P.2d 949 (1966). Indeed, Green was still legally committed to St. Elizabeths by reason of insanity even at the time of his trial,[3] and on argument we are advised that he is presently in residence there. Moreover, as the evidence on trial indicates, the fact that Green's schizophrenia was found to be in remission several weeks before the trial does not preclude the possibility that it may have been reactivated, perhaps by the trial itself. If this case does not require a Pate v. Robinson hearing to determine competence, one that does may be a long time coming.

II

I concur in that part of the majority opinion which notes with approval the adoption in 1965 by the Judicial Conference of the District of Columbia Circuit of the following recommendation from its Committee on Pre-Trial Mental Examinations:

The report of a court-ordered pre-trial mental examination should be made in

2. Where substantial doubt as to the competence of the accused appears, the trial court, *sua sponte*, must hold a hearing on this issue. Pate v. Robinson, 383 U. S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

3. *See* Green v. United States, 122 U.S.App. D.C. 33, 34 n. 1, 351 F.2d 198, 199 n. 1 (1965) *(en banc).*

substantial detail, recounting what was done to get at the facts concerning the accused's mental condition and what those facts are, not merely the conclusions the psychiatrists have drawn from the facts.

The Committee clearly explained what "substantial detail" meant. It asked that competency reports include: (1) Names of qualified psychiatrists and qualified psychologists who have examined the accused; (2) the number of examinations and the duration of each; (3) names of all neurological and psychological tests performed, together with a brief description of their results; (4) names of relatives, friends, employers and others contacted, together with brief summaries of the information provided by these sources; (5) a description of contact with and information provided by and to defense counsel and prosecution; (6) a description of the treatment of the defendant, including use of drug therapy; (7) a description of any significant change in the defendant during his commitment, including an evaluation of any incarceration recovery; (8) behavioral description of the defendant's mental condition; (9) names of the professional persons attending the staff conference; (10) the prognosis.

The Committee also requested that whenever possible the competency report contain the following additional information: (a) Is the accused oriented as to time, place and events? (b) Is the accused able to describe events connected with the alleged crime? (c) Is the accused willing to cooperate with his counsel? (d) Will the accused be able to follow the evidence? (e) Will the accused be able to assist counsel in evaluating the testimony of witnesses? (f) If the trial is expected to be a long one, will the accused be able to meet the demands made upon him? (g) If the accused is unwilling to participate in the examination process, is this refusal the result of a mental disease or defect?

When the recommendation of the Judicial Conference did not lead to significant changes, Chief Judge Curran instructed Dr. Cameron, Superintendent of St. Elizabeths, that future hospital reports should contain the above information.[4] Dr. Cameron replied that it was "beyond the capability of the Hospital with its present staff limitations" to furnish such detailed reports.[5] But he referred to the possibility of simply giving the court all the hospital records relating to the defendant. In any event, it is clear that more information must be made available if we are to have informed judicial, as distinguished from medical, decisions on competence.

4. Letter from Chief Judge Curran to Dr. Cameron, May 19, 1967.

5. Letter from Dr. Cameron to Chief Judge Curran, June 6, 1967.